UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-20412-CR-DMM(s)(s)

UNITED STATES OF AMERICA

vs.

JEIFRY DEL ROSARIO GAUTIER,

Defendant.
_____/

## STIPULATED FACTUAL BASIS FOR PLEA

Pursuant to Rule 11(b)(3), the following sets forth the factual basis for defendant guilty plea to Count 1 of the indictment, which charges the defendant with conspiracy to import cocaine into the United States, in violation of Title 21, United States Code, Section 963:

1. An investigation by U.S. law enforcement authorities revealed a drug trafficking organization ("DTO") operating in the Dominican Republic that involved defendant JEIFRY DEL ROSARIO GAUTIER (the defendant) and other co-conspirators, including Cesar Emilio Peralta; the defendant's father Ramon Antonio Del Rosario Puente; Jose Jesus Tapia Perez, and Darys Jose Baez Melo. Based on information learned from confidential sources and the lawfully-intercepted communications of these co-conspirators, the investigation revealed that from at least as early as January 2015, through April 11, 2019, the foregoing individuals were involved in this DTO. The members of the DTO would acquire cocaine imported from Colombia and sell the cocaine, which would be included in shipments of cocaine sent from the Dominican Republic to Puerto Rico, New York, and other locations.

2. Beginning in February 2017, U.S. law enforcement authorities obtained multiple successive wiretap orders on approximately 25 different communication devices used by the DTO. Law enforcement authorities lawfully intercepted the defendant, Tapia, Peralta, Del Rosario

Puente, and others, who were using communications devices to discuss their narcotics trafficking business via the Blackberry messaging system through electronic messages known as BBMs. These lawfully-intercepted communications involved the buying and selling cocaine. In particular, DEL ROSARIO GAUTIER and others were lawfully intercepted discussing the purchase and sale of numerous kilograms of cocaine, the delivery of that cocaine, and the return of cocaine proceeds to the Dominican Republic. In these communications, the defendant spoke in Spanish and often used coded and cryptic language to describe and to facilitate his drug trafficking activities.

3. The members of the DTO used BBMs to communicate, discuss and plan drug transactions. DEL ROSARIO GAUTIER used the BBM PIN screenname "Marac4x." Tapia used screenname "Bola Negra." In conversations, he was referred to by others as "Bola" and "Boludo."

4. During May 2017, law enforcement authorities lawfully intercepted a series of BBM communications indicating that members of the DTO had just received or were about to receive a shipment of cocaine, and that plans were being made to distribute the cocaine to various members of the DTO. Specifically, on or about May 13, 2017, BBMs were intercepted between DEL ROSARIO GAUTIER and Tapia wherein DEL ROSARIO GAUTIER told Tapia that "his guy" just gave DEL ROSARIO GAUTIER "2" [kilos of cocaine] and that "he" could not front (or provide in advance) DEL ROSARIO GAUTIER all of the cocaine due to the amount of money at stake.

5. During May 2017, the defendant and other members of the DTO were also involved in a drug transaction which resulted in the seizure of approximately 20 kilograms of cocaine. On approximately May 14, 2017, DEL ROSARIO GAUTIER and Baez Melo were lawfully

intercepted discussing the delivery of 10 kilograms of cocaine for $7,200 per kilogram, and that the third party, "Leopold," already had $100,000 in U.S. currency.

6.     On May 15, 2017, DEL ROSARIO GAUTIER and Baez Melo were lawfully-intercepted in a conversation in which DEL ROSARIO GAUTIER discussed with Baez Melo that DEL ROSARIO GAUTIER already had the money to purchase 29 kilograms of cocaine, and the Baez Melo was with a cocaine source of supply.

7.     On or about May 28, 2017, DEL ROSARIO GAUTIER and Baez Melo were lawfully intercepted using communication devices to discuss a cocaine deal. DEL ROSARIO GAUTIER and his father, Del Rosario Puente, arranged for the transfer in Santo Domingo, Dominican Republic, of approximately 20 kilograms of cocaine. DEL ROSARIO GAUTIER and Del Rosario Puente arranged for a car equipped with hidden compartments, known as a "trap car," driven by Baez Melo, to pick up the cocaine and take the cocaine to a stash house. Ramon Del Rosario Puente and DEL ROSARIO GAUTIER and others also discussed the quantity, quality, and price of the cocaine to be purchased, and their logistical plans for retrieving the cocaine from an unknown person with BBM screenname "Sebastian."

8.     On or about May 29, 2017, DEL ROSARIO GAUTIER, Del Rosario Puente, and Baez Melo, and others were lawfully-intercepted using a communications device to make final arrangements with the seller to use the trap car to obtain and transport the cocaine. DEL ROSARIO GAUTIER also asked Baez Melo to pick-up DEL ROSARIO GAUTIER's identification from the stash house. During the day, Baez Melo obtained 20 kilograms from Sebastian, hid the kilograms in his trap car, and transported 14 kilograms to a stash house, before attempting to deliver the remaining six kilograms.

9.  Law enforcement authorities in the Dominican Republic located and then surveilled Baez Melo, who was driving the trap car loaded with cocaine. A short time later, law enforcement authorities observed Baez Melo exit the stash house and get into a car. Law enforcement authorities then detained Baez Melo and discovered six kilograms of suspected cocaine in the car. A search of the stash house revealed an additional 14 kilograms of cocaine. Baez Melo also had in his possession the identification of DEL ROSARIO GAUTIER, consistent with the earlier conversation in which DEL ROSARIO GAUTIER asked Baez Melo to pick up his (DEL ROSARIO GAUTIER's) identification from the stash house.

10. After the arrest of Baez Melo, law enforcement authorities lawfully intercepted Del Rosario Puente and DEL ROSARIO GAUTIER discussing the arrest of Baez Melo. They discussed the need to change communication device numbers to avoid detection by law enforcement.

11. Law enforcement agents assigned to this investigation have interviewed numerous cooperating defendants, as well as cooperating sources of information, familiar with the operations of drug trafficking networks in the Dominican Republic, and the activities of the network in which DEL ROSARIO GAUTIER was involved with Del Rosario Puente, Tapia-Perez, Cesar Peralta and others, in particular. According to these witnesses, the DTO received cocaine from Colombia in the Dominican Republic, where various members of the network assembled loads of cocaine for shipment from the Dominican Republic to Puerto Rico and the United States mainland. Shipments were sent to the United States via commercial air, private vessels, and commercial cargo shipments. DEL ROSARIO GAUTIER was aware that the cocaine with which he was involved, including the twenty kilograms seized from Baez Melo, would later be shipped from the Dominican Republic either directly to the United States or to the United States via Puerto Rico.

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

Date: __April 5, 2021__   By: _____
                              RICHARD E. GETCHELL
                              ASSISTANT U.S. ATTORNEY

Date: April 1st, 2021   By: _____
                              RICHARD O. DANSOH, ESQ.
                              ATTORNEY FOR DEFENDANT

Date: _____   By: _____
                              JEIFRY DEL ROSARIO PUENTE
                              DEFENDANT

5